## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WESLEY GAMBLE, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| | ) No.  18 C 4520 |
| v. | ) |
| | ) Judge Virginia M. Kendall |
| FIAT CHRYSLER AUTOMOBILES, | ) |
| a Delaware Corporation | ) |
| | ) |
| *Defendant.* | ) |
| | ) |
| | ) |

## <u>ORDER</u>

Before the Court is Plaintiff's Motion to disqualify Defendant's counsel, Paul Starkman, along with his entire firm, Clark Hill PLC, from representing Defendant in this matter. (Dkt. 58). The Motion stems from allegedly improper conduct at the long-awaited deposition of Plaintiff Wesley Gamble. For the reasons stated within, Plaintiff's Motion to disqualify Starkman and Clark Hill is denied.

Gamble's deposition took place on June 26, 2019 at the Clark Hill Chicago office. Plaintiff's counsel takes issue with two incidents which allegedly occurred at the deposition, both of which she contends violate Rule 4.2 of the Model Rules of Professional Conduct. First, counsel suggests that Starkman violated Rule 4.2 and committed misconduct by handing his business card to Gamble at the beginning of the deposition. (Dkt. 58, ¶¶ 3-4). Second, counsel contends that Starkman breached the Rule when he "engaged in conversation with the Plaintiff about the harassment policy, a significant issue in this case" while Plaintiff's counsel was not present. (*Id.* at ¶ 9).

In support of these assertions, Plaintiff later submitted Gamble's executed sworn affidavit. (Dkt. 60). In it, Gamble attests that "At the beginning of the deposition Paul Starkman handed his business card to the [sic] me." (*Id.* at ¶ 5). Gamble further states: "During a break, when my counsel was out of the conference room where the deposition was taking place, Defendant's counsel Starkman engaged me [sic] conversation about the harassment policy, a significant issue in this case." (*Id.* at ¶ 12). Gamble's affidavit also reads: "During the deposition I did not understand the sinister and improper motive behind Starkman's actions of giving me

his business card, nor discussing issues of harassment while my lawyer was out of the room." (*Id.* at ¶ 22).

The Court "possesses broad discretion in determining whether disqualification is required in a particular case…" *Watkins v. Trans Union, LLC,* 869 F.3d 514, 518 (7th Cir. 2017) (quoting *Whiting Corp v. White Machinery Corp.,* 567 F.2d 713, 715 (7th Cir. 1977)). A motion to disqualify is a serious matter which has "'immediate, severe, and often irreparable … consequences' for the party and disqualified attorney." *Id.* at 519 (quoting *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 719 (7th Cir. 1982)). Accordingly, disqualification is a drastic measure that should be applied sparingly and only in the most egregious of circumstances. *Id.* Here, disqualification is governed by the Rules of Professional Conduct. *Id.*

Plaintiff seeks disqualification under Rule 4.2 which reads: "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Mod. Rules Prof. Cond. § 4.2. "The purpose of this rule is to prevent lawyers from circumventing opposing counsel to get careless statements from adverse parties; to protect the integrity of the attorney-client relationship; to prevent the inadvertent disclosure of privileged information; and to facilitate settlement by channeling disputes through lawyers familiar with the negotiation process." *See e.g., Hill v. Shell Oil Co.,* 209 F.Supp.2d 876, 878 (N.D. Ill. 2002); *see also* Mod. Rules Prof. Cond. § 4.2, Cmt. 1. In assessing a motion to disqualify, the reviewing court must also be wary of attempts to use the Rule as a sword rather than a shield. *See e.g., Timothy B. O'Brien LLC v. Knott,* 2018 WL 4658213, at *2 (W.D. Wis. Sept. 27, 2018) ("[T]he court must make sure that the rules of professional ethics are not used as a weapon for tactical advantage, because granting a motion to disqualify counsel imposes an immediate and severe burden on the disqualified attorney and her client.").

As stated by the Court during oral argument, Starkman handing Gamble his business card represents a professional courtesy—not professional misconduct. It is common practice in depositions for an attorney to hand out his business card so that the participants (e.g., deponent, opposing counsel, court reporter, videographer) know precisely who they are interacting with and can refer back to the card in the event they forget the attorney's name. Plaintiff suggests that the simple act of offering your business card amounts to misconduct because of the risk of breaking down the attorney-client relationship. Even if the Court were to give credence to this being a legitimate consequence of sharing one's business card, the risk simply is not present when Plaintiff's counsel was present for the entire exchange and immediately and "vehemently objected." (Dkt. 58, ¶ 4). Classifying this behavior as misconduct would sweep in the innocuous conduct that attorneys engage in on a daily basis and is far beyond the scope of Rule 4.2.

Turning to the alleged conversation between Starkman and Gamble during a deposition break, the Court is presented with Gamble's affidavit and the statements made by two of Defendant's counsel on the record and in open court. Gamble asserts through his affidavit that Starkman initiated the conversation, the conversation was regarding the harassment policy at issue in the case, and that Starkman's co-counsel, Autumn Moore, told Starkman to stop talking to Gamble. (Dkt. 60). In contrast, Starkman represented to the Court that during the break it was Gamble (not Starkman) who asked whether Starkman knew the number of his law firm's harassment policy (not the harassment policy at issue in the case). (Dkt. 62). Starkman stated that he responded to Gamble by saying he did not know the number and that he could not talk to Gamble. Moore was also at the deposition and corroborated Starkman's version of events at oral argument.

The competing narratives from each side leave the Court facing a standard factual dispute, not unlike summary judgment. Ordinarily, the Court would proceed with an evidentiary hearing to resolve factual issues and specifically, here, to have Gamble testify and recount the allegedly improper conversation. However, at oral argument, the Court offered Plaintiffs' counsel the opportunity to bring her client in to court to testify about the conversation, she declined the opportunity to conduct the evidentiary hearing. Similarly, the Defense declined the opportunity to hold a hearing and urged the Court to rule on the papers. The Court must therefore resolve the factual dispute by weighing the credibility of Gamble's affidavit against the in court statements made by Starkman and Moore, two officers of the Court. *See United States v. Thurman,* 889 F.3d 356, 366 (7th Cir. 2018) (deferring to the district court's credibility determination when faced with "[defendant's] affidavit against the live testimony of the agents"); *see e.g., Bradley v. Arc of Nw. Indiana, Inc.,* 2015 WL 2189284, at *4 (N.D. Ind. May 11, 2015) ("Once proffered, an affidavit is subject to scrutiny and 'bare assertions' lacking any substantive detail are insufficient for a plaintiff to meet his or her burden.").

Gamble's account of the conversation spans a mere two sentences of his affidavit and is sorely lacking in detail which would provide necessary context. It is not clear exactly what was discussed outside of the broad topic of "the harassment policy," how long the conversation lasted, or the substantive depth of the exchange. Such general and bare assertions in an affidavit are inadequate. *See O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 989 (7th Cir. 2001) ("[W]e will only credit facts in an affidavit that are sufficiently definite and particular…") (internal quotations omitted); *see also Tezak v. United States,* 256 F.3d 702, 717 (7th Cir. 2001) (writing that facts in an affidavit "must be stated with particularity and must be definite as to times, places, persons, and circumstances."). The affidavit is not specific about what harassment policy was being discussed and what aspects of the policy were discussed. In the face of the generalized and conclusory affidavit, the Court was presented with the credible and corroborating statements made by Starkman and

Moore at oral argument. The Court was able to judge the demeanor of the attorneys and has had past experience in Court with lead counsel. While not in affidavit form, defense counsel's statements are accepted as true and accurate as they were made by officers of the court who have established their professionalism in court in the past. In contrast to the minimalist account of the self-serving affidavit of the plaintiff whose statement is being used as a sword to remove defense counsel from the case, the Court credits the statements of Defense counsel over that of the plaintiff. The unfortunate history of the case is that Plaintiff's counsel has been uncooperative with Defense counsel's efforts to complete discovery, has been on the receiving end of a motion to compel as a result, and has been ordered by the Court to complete discovery in spite of her belief that Defense counsel was at fault for the delay. This past reflects a motivation to have Defense counsel removed and is another effort by Plaintiff's counsel to stall discovery. The best defense is a good offense and Plaintiff's counsel continues to assail opposing counsel and this Court rather than complete her work. Assessing the divergent accounts, the Court credits the articulate and consistent statements of Starkman and Moore over Gamble's deficient affidavit. *See Thurman,* 889 F.3d at 366. As such, Starkman responding to Gamble's question with a single word answer and informing Gamble that he cannot speak with him does not run afoul of Rule 4.2. Gamble's question was related to a matter outside the scope of litigation and any response by Starkman served as a courtesy and nothing more. Mod. Rules Prof. Cond. § 4.2, Cmt. 4 ("This Rule does not prohibit communication with a represented person, or an employee or agent of such a person, concerning matters outside the representation.").

Assuming arguendo that the Court were to credit Gamble's statement over the statements of both Starkman and Moore, disqualification would still not be warranted. If Starkman did, in fact, affirmatively engage Gamble in conversation regarding a harassment policy, such conduct might violate the clear text of Rule 4.2 if the discussion was pertinent to the issues in the case. Plaintiff's counsel would have this Court apply a form of strict liability to violations of the Rule in that any conduct contrary to the Rule would lead to counsel's removal from the case without consideration of the severity of the breach. Here, Gamble's affidavit is devoid of details as to the depth and length of the alleged conversation. However, it could not have been a particularly extensive conversation as it purportedly occurred within the confines of a short bathroom break. Whatever conversation took place, the affidavit and Plaintiff's Motion fail to allege any prejudice from the interaction. *See e.g., Scanlan v. Eisenberg,* 893 F.Supp.2d 945, 952 (N.D. Ill. 2012) ("Even if these communications were found to be in violation of Rule 4.2, General Trust has not suffered prejudice."); *Pettery v. First Nat. Bank of Geneva,* 225 Ill. App. 3d 539, 546 (1992) ("In this case, the communication appears to be *de minimis,* and the defendants did not establish that this communication resulted in any prejudice to them."). Plaintiff simply alleges that Starkman committed misconduct and should be disqualified as a result. This is too dire a penalty and would significantly interfere with Defendant's right to choose its own counsel along with the advancement of this

litigation. *See e.g., Goswami v. DePaul Univ.,* 8 F.Supp.3d 1004, 1018-19 (N.D. Ill. 2014) ("Finally, it is suggested that Dr. Goswami's counsel be disqualified for their violations of Rule 4.2. That too is a drastic sanction and obviously would impinge on Dr. Goswami's right to counsel, as well as affecting the progress of this case.").

The Court enjoys broad discretion in the realm of considering an attorney's disqualification. *Watkins,* 869 F.3d at 518. Balancing the interests at play here, the Court finds that disqualification is not warranted even if the Court were to conclude that Starkman violated Rule 4.2, which the Court does not. Any breach of the Rule would have amounted to nothing more than a *de minimis* violation and no prejudice has been alleged. Moreover, there is no evidence that Starkman harbored any illicit motives in this interaction which Rule 4.2 attempts to protect against. Disqualification of counsel is a severe penalty warranted only in the most egregious circumstances. *Id.* Those circumstances are not present here. Therefore, Plaintiff's Motion to disqualify defendant's counsel is denied.

Virginia M. Kendall
United States District Judge

Date: July 17, 2019